**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

June 27, 2011

Alan L. Krumholz
Krumholz Dillon PA
574 Summit Avenue, Suite 402
Jersey City, New Jersey 07306
    (*Attorney for Plaintiff Rhonda Daly*)

Alan Muraidekh
Hodgson Russ LLP
60 East 42nd Street, 37th Floor
New York, New York 01065

Thomas M. Smith
Eckert Seamans Cherin & Mallot, LLC
108 Bank Street, Suite 1016
White Plains, NY 10606
    (*Attorneys for Defendant and Third Party Plaintiff Norfolk Southern Railroad*
    *Company*)

Kim Marie Connor
Thomas F. Quinn
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
33 Washington Street
Newark, NJ 07102
    (*Attorneys for Third Party Defendant James River Insurance Company*)

    **RE:   Daly v. Norfolk Southern Railroad Company, et al. v. James River**
           **Insurance Company, Civ. No. 09-4609 (WJM)**

Dear Counsel:

This is a wrongful death and survival action, brought under the Federal Employee Liability Act ("FELA"). Defendant Norfolk Southern Railroad Company ("Norfolk") has filed a Third Party Complaint against Third Party Defendant James River Insurance Company ("James River") to compel James River to provide Norfolk with insurance coverage for the accident. Third Party Defendant James River brings the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that there is no subject matter jurisdiction as the insurance policy under which Norfolk seeks coverage has a binding arbitration policy. James River further seeks an Order compelling arbitration in this matter. There was no oral argument. Fed. R. Civ. P. 78. For the reasons that follow, Third Party Defendant James River's motion to dismiss and to compel arbitration is granted.

## I. BACKGROUND

Sean Daly was an employee of Intermodal Ramp Management, Inc. ("Intermodal"), assigned to work at a Norfolk site in Elizabeth, New Jersey on August 11, 2008. (Am. Compl. ¶ 6.) While at this work site, Daly was crushed to death by a piece of machinery. Following his death, Daly's wife, Plaintiff Rhonda Daly, filed a complaint (which was later amended) against Norfolk and Intermodal. Norfolk filed a motion to dismiss the Amended Complaint, which was denied on August 19, 2010. Norfolk then filed a Third Party Complaint against James River, seeking to compel James River to provide it with a defense and indemnification of Plaintiff's claims, pursuant to the insurance policy issued by James River to Intermodal (the "Policy"). James River had previously denied coverage, defense and indemnification for these allegations on October 6, 2009. James River then filed the instant motion to dismiss the Third Party Complaint, arguing that arbitration, not the Court, is the proper forum for resolution of the dispute.

## II. DISCUSSION

James River alleges that since the Policy includes a Binding Arbitration clause governed by the Federal Arbitration Act ("FAA"), the Court does not have subject matter jurisdiction over the insurance dispute. In order to determine whether a controversy must be submitted to arbitration pursuant to the FAA, the Court must make two findings: (1) whether a valid agreement to arbitrate exists; and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Here, whether or not the particular dispute falls within the scope of the agreement is not at issue, as Norfolk is only disputing whether there is a valid agreement to arbitrate. As such, this Court need only determine whether or not the arbitration agreement is valid.

### A.     Rule 12(b)(1) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  Courts may use Rule 12(b)(1) to decide whether to dismiss a suit by virtue of an arbitration agreement between the parties.  *See, e.g., Hemberger v. E\*Trade Fin. Corp.*, Civ. No. 07-1621, 2007 U.S. Dist. LEXIS 85702, at \*7-\*8 (D.N.J. Nov. 19, 2007) ("A valid and enforceable arbitration agreement will divest the court of subject matter jurisdiction over the arbitrable disputes." (citing 9 U.S.C. § 2)); *Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, Civ. No. 05-54, 2005 U.S. Dist. LEXIS 34386, at \*27 (D.N.J. Jul. 15, 2005) ("[A]n arbitration defense challenges the court's subject matter jurisdiction over the case and is properly raised in a Rule 12(b)(1) motion."); *Thompson v. Nienaber*, 239 F. Supp. 2d 478, 481 (D.N.J. 2002).

"When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must accept as true all material allegations of the complaint and construe that complaint in favor of the non-moving party." *Thompson*, 239 F. Supp. 2d at 481 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Moreover, if a factual question pertaining to jurisdiction exists, the court may examine facts and evidence outside of the pleadings to assure itself of its authority to hear the case. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997); *see also Thompson*, 239 F. Supp. 2d at 482 (noting that the court may "find facts based on affidavits or materials submitted to" it).

### B.     Validity of the Arbitration Clause

The Policy contains a "Binding Arbitration" endorsement, which states as follows: "Should we and the insured disagree as to the rights and obligations owed by us under this policy...either party may make a written demand that the dispute be subjected to binding arbitration." (Third Party Compl., Docket Entry No. 36, Ex. A.)  To determine whether the parties agreed to arbitrate, ordinary state-law principles of contracts apply. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).  "Thus, generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening the FAA." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).

James River argues that the Policy's Binding Arbitration clause is a clear and unambiguous agreement to submit any coverage disputes, including those by an "additional insured," to arbitration.  James River further argues that since Norfolk asserts that its entitled to coverage under the Policy issued to Intermodal, as a third party

beneficiary it is bound by the arbitration provision contained in the policy. *See E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.s.*, 269 F.3d 187, 195 (3d Cir. 2001) (a non-signatory to an arbitration clause can still be bound as a third party beneficiary). Norfolk, on the other hand, argues that it should not be bound by the agreement, as: (1) the arbitration agreement's language uses the word "may" instead of "shall," and thus should not be considered mandatory; (2) James River has denied Norfolk's demand for coverage, making the arbitration provision no longer applicable; and (3) the contract was procured and paid for by Intermodal, and was not delivered to Norfolk until after Plaintiff Daly's accident, making enforcement of the agreement against Norfolk unconscionable. Each of these issues will be addressed in turn.

### 1. Arbitration Clause Language

Norfolk argues that a valid agreement to arbitrate does not exist here because the contract's arbitration language states only that "either party **may** make a written demand that the dispute be subjected to binding arbitration." (Norfolk's Opp. Br. at 5.) Norfolk claims that since the provision does not say the disputes "shall" be submitted to arbitration, arbitration should only proceed upon the mutual consent of the parties, and that any ambiguity regarding the meaning of the provision should be construed in Norfolk's favor. However, there is no ambiguity presented here. The Policy is clear and unambiguous that either Norfolk or James River may choose to subject the dispute to binding arbitration. Even one of the cases cited by Norfolk supports this interpretation, finding that a similar provision clearly means that once either party has chosen arbitration, arbitration is then compelled under the agreement. *See Tm Delmarva Power v. Ncp of Va.*, 263 Va. 116, 121, 557 S.E.2d 199 (Va. 2002).

Furthermore, Norfolk has not shown that James River has waived its right to compel arbitration simply by not yet filing an official "written demand" for arbitration. Courts generally only find a waiver of the right to compel arbitration where the demand comes long after a lawsuit is commenced. *See Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997) ("[A] party waives the right to compel arbitration only in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown."); *Hoxworth v. Blinder, Robinson & Co. Inc.*, 980 F.2d 912, 925-27 (3d Cir. 1992) (holding party waived right to compel arbitration because by contesting the merits in litigation, party opposing arbitration had been prejudiced); *Gavlik Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783-84 (3d Cir. 1975) (rejecting argument that party compelling arbitration waived right by filing third-party complaint, because prejudice was not shown). Norfolk has not been

prejudiced here as James River did not delay in requesting arbitration; instead, James River's first response to Norfolk's filing of a Third Party Complaint was to move to compel arbitration. As such, the Court finds the arbitration clause language is binding on Norfolk and has not been waived by James River.

### 2. Effect of James River's Denial of Coverage

Norfolk further argues that since James River denied Norfolk's demand for coverage, James River cannot now attempt to enforce the arbitration provision. Norfolk cites a few cases from the 1930s to support this argument. Essentially, Norfolk is claiming that since James River has "repudiate[d] its duties under the contract," it cannot now enforce a separate provision of the contract. (Norfolk's Opp. Br. at 8.) However, simply denying coverage does not waive a party's right to arbitrate. In order to waive the right to arbitrate, a more decisive indication of waiver is required, such as denying coverage and then stating, "[you'll] have to sue for it." *Evans v. Farmers' Reliance Ins. Co. of New Jersey*, 110 N.J.L. 159, 160, 164 A. 258 (N.J. Err. & App. 1933). Here, James River did just the opposite – in both their initial denial of coverage (Quinn Cert., Docket Entry No. 50-2, Ex. B) and in their follow-up denial (Quinn Cert., Docket Entry No. 54-1, Ex. B), James River expressly reminded Norfolk of the binding arbitration clause. As such, James River has not waived the right to enforce the arbitration provision simply by denying Norfolk's demand for coverage.

### 3. Unconscionability

Finally, Norfolk argues that it "did not agree to, bargain for, or accept" the Policy, or the arbitration clause specifically, and that the Policy was not delivered to Norfolk until after Plaintiff Daly's accident. (Norfolk's Opp. Br. at 9.) As such, Norfolk argues, it would be unconscionable to enforce the arbitration clause here.

"New Jersey's courts have regularly held that non-negotiated mandatory arbitration provisions in insurance contracts — even if contracts of adhesion — are enforceable." *Emergency Physicians of St. Clare's, LLC v. ProAssurance Corp.*, Civ. No. 09-6244, 2010 U.S. Dist. LEXIS 85308, at *12 (D.N.J. Aug. 19, 2010) (citing *Defilippis v. Prudential Property & Cas. Ins. Co.*, 2007 N.J. Super. Unpub. LEXIS 1641, 2007 WL 1485182, at *1-2 (N.J. Super. App. Div. May 23, 2007)). In determining whether such non-negotiated terms should be enforced, "courts have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Rudbart v. North Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 605 A.2d

681, 687 (N.J. 1992). Applying these factors to the arbitration agreement at issue here, it follows that this is not the type of contract that is considered "unconscionable." Norfolk is not an unsophisticated or weak party to an overly complex contract. Instead, Norfolk is simply a third-party beneficiary attempting to reap the benefits of the Policy as an additional insured. Norfolk is bound by the terms and conditions of the Policy it is attempting to seek coverage under, regardless of whether Norfolk agreed to the arbitration provisions or not. The Court agrees with James River, that "Norfolk cannot pick and choose which portions of the James River Policy apply." (James River Reply Br. at 11.) The Court finds that the contract is not unconscionable, and that the arbitration agreement is enforceable against Norfolk.

### III. CONCLUSION

For the foregoing reasons, Defendant James River's motion to dismiss and to compel arbitration is **GRANTED**. An Order follows this Letter Opinion.

s/ William J. Martini<br>
**WILLIAM J. MARTINI, U.S.D.J.**